Louis M. Phillips (La. Bar No. 10505)
Peter A. Kopfinger (La. Bar No. 20904)
Ryan J. Richmond (La. Bar No. 30688)
**GORDON, ARATA, MCCOLLAM**
   **DUPLANTIS & EAGAN, L.L.P.**
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: lphillips@gordonarata.com
Email: pkopfinger@gordonarata.com
Email: rrichmond@gordonarata.com

*Attorneys for the debtor-in-possession,*
*West Feliciana Acquisition, L.L.C.*

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: | Case No. 10-10053 |
| WEST FELICIANA ACQUISITION, L.L.C., | Chapter 11 |
| Debtor. | Judge Douglas D. Dodd |

### MOTION, WITH SUPPORTING AUTHORITY, FOR ORDERS (I)(A) AUTHORIZING AND APPROVING BIDDING AND SALE PROCEDURES (B) AUTHORIZING AND APPROVING NOTICE PROCEDURES AND SETTING A HEARING DATE FOR SALE HEARING, (II) AUTHORIZING THE IN GLOBO SALE FREE AND CLEAR OF ALL LIENS, CLAIMS AND INTERESTS AND (III) FOR RELATED RELIEF

West Feliciana Acquisition, LLC ("***WFA***"), debtor and debtor-in-possession hereby moves this Court (the "***Motion***") for the entry of Orders substantially in the form attached hereto as Exhibit A and Exhibit B pursuant to sections 105 and 363 of chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***"), and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") (i)(a) authorizing and approving the bidding and sale procedures (the "***Bidding and Sale Procedures***") attached hereto as Exhibit C in connection with the proposed *in globo* sale of the Assets (as defined below) by WFA (the

"**Sale Transaction**"), (b) authorizing and approving the forms of Notice attached hereto respectively as Exhibit D and Exhibit E, and approving the manner of solicitation of bids and notice of the Sale Transaction (collectively, the "**Notice Procedures**"), (c) setting the time, date and place of a hearing to consider the Sale Transaction (the "**Sale Hearing**"), (ii) authorizing and approving the *in globo* sale of the Assets Free and Clear of All Liens, Claims and Interests, and (iii) granting them such other and further relief as the Court deems just and proper. In further support of this Motion, WFA respectfully represents as follows:

**Jurisdiction and Background**

1.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.

The statutory bases for the relief requested herein are sections 105 and 363 of the Bankruptcy Code, Rules 2002, 6004 and 9014 of the Bankruptcy Rules.

**Chapter 11 Filing**

3.

WFA filed the above-captioned bankruptcy case (the "**Bankruptcy Case**") under chapter 11 of title 11 of the United States Code on January 17, 2010 (the "**Petition Date**").

4.

An official committee of unsecured creditors has been appointed in this Chapter 11 case. No trustee or examiner has been requested or appointed in this Chapter 11 case. Accordingly,

WFA continues to manage and operate its business as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

## Events Leading to Chapter 11

### 5.

WFA owns a paper mill (the "***Mill***") located in St. Francisville, Louisiana, approximately twenty-eight (28) miles north of Baton Rouge, Louisiana. WFA purchased the Mill from Tembec, Inc. in April 2009. At the time of the acquisition of the Mill, the Mill was in cold shut down mode, meaning that the Mill's digesters, pulper and lines had been purged, the paper machines were not running and power was not being delivered to the Mill. The Mill manufactures kraft paper in various basis weights. The kraft paper is sold primarily to manufacturers of corrugated containers and paper bags. As of the Petition date, the paper output was approximately 600 tons, with a target paper output of 875+ tons. The Mill consists of a 455,000 sq. ft. of building on a 610 acre site and includes a pulp mill and 4 paper machines. The Mill is ideally located for both production and distribution. It is situated near I-10, the major East-West southern interstate, US 61, a major North-South Highway and a rail spur that is part of the Canadian National Railway System (formerly Illinois Central Railroad). This existing infrastructure provides excellent overland transportation to domestic and international customers as well as infrastructure to receive delivery of wood chips. The Mill is also located on the Mississippi River with river frontage providing future access to ship to the international markets.

### 6.

In an effort by the Louisiana Department of Economic Development ("***LDED***") to incentivize WFA's investment in the Mill, LDED and WFA entered into that certain Cooperative Endeavor Agreement (the "***CEA***"), effective April 6, 2009, to facilitate the purchase,

improvement and operation of the Mill.  The public purpose served by the CEA was the creation and maintenance of jobs and derivative economic benefits to the community and the State of Louisiana.

7.

Following WFA's acquisition of the Mill, WFA engaged Fluor Enterprises, Inc. and its affiliates ("***Fluor***") to perform necessary engineering services required to start-up the Mill and bring its paper machines into production.  Fluor also was engaged to operate and maintain the Mill after it was brought into operation.  During the course of performance, however, disagreements developed between Fluor and WFA as to the scope of the undertaking.  Fluor filed liens against the Mill seeking the payment of approximately $46,000,000.00 for work it asserts was performed on the Mill.  WFA disputes Fluor's lien and believes that Fluor owes WFA damages arising from the Mill contracts.

8.

After WFA and Fluor parted ways, WFA needed immediate operational support to run the Mill.  WFA also needed additional funds to continue with its start-up. Given Fluor's significant lien amounts, WFA's initial equity investors would not risk investing additional funds in WFA.

9.

WFA attempted to move forward by hiring necessary employees and was improving its production, but lacked sufficient funds to cover learning curve delays and long-term capital improvements to enhance reliability and productivity.

10.

Record rainfall and cold temperatures in December 2009 and January 2010 also played a significant role in the Mill's finances and operations. The substantial rainfall resulted in loggers being unable to log and, thus, provide wood necessary for the operation of the Mill. The shortage of wood also increased the cost of available wood. The bitter cold temperatures caused a freeze in certain production components which likewise resulted in a drop in paper production.

11.

The lack of sufficient operating funds created by the drop in paper production and WFA's inability to raise additional capital made it necessary for WFA to file the Bankruptcy Case.

**Debtor-In-Possession Financing and Need for a Section 363 Sale**

12.

As of the Petition date, WFA did not have sufficient cash to operate its business and pay operating expenses such as utilities and obligations to employees, vendors and service providers. On January 22, 2010, the Bankruptcy Court approved WFA's request for debtor-in-possession financing ("**_DIP Loan_**") granted by Amzak. The DIP Loan was put in place to allow WFA to continue its operations until such time as the Assets can be sold at a Section 363 sale.

13.

Even with the DIP Loan, the Mill was unable able to stockpile an inventory of wood. This problem was exacerbated by the increasing shortage of available wood due to the weather, which in turn caused the price of available wood to further escalate to an all-time high. These factors contributed to a reduction in WFA's budgeted post-petition paper production and operating funds, resulting in WFA's decision to idle the Mill. Idling the Mill will allow WFA to conserve cash necessary to safeguard the Assets while proceeding with the sale process.

14.

Concurrently with this Motion, WFA is filing an application to employ Poyry Forest Industry Consulting, Inc. ("**Poyry**") to assist WFA in selling the Assets. Poyry has significant experience in paper mill operations and with the bankruptcy process and is personally familiar with the Mill. It is anticipated that Poyry will facilitate the sale of the Assets by attracting a number of potential purchasers for the Assets.

15.

WFA only has sufficient funds to pay for certain key expenses *e.g.*, electricity through the anticipated sale date of April 9, 2010. Keeping the electricity on allows the paper machines to remain warm which will substantially increase their value. Given the scarcity of available funds, the Assets need to be sold as soon as reasonably possible. This can only be accomplished through a Section 363 sale.

**Relief Requested**

16.

By this Motion, WFA seeks orders (i) authorizing and approving the *in globo* sale of WFA's right, title and interest in and to substantially all of WFA's immovable property and buildings and improvements thereon and movable property (the "*Assets*") to a successful bidder free and clear of all liens, claims and interests as provided in the Purchase Agreement (defined below), and (ii)(a) authorizing and approving the Bidding and Sale Procedures, (b) authorizing and approving the Notice Procedures, and (c) setting the time, date and place of the Sale Hearing, and (iii) granting WFA such other and further relief as the Court deems just and proper.

**The Purchase Agreement**

17.

Debtor proposes to offer for sale the Assets in a competitive sale. Debtor is preparing the purchase agreement ("***Purchase Agreement***") to be executed by a potential bidder, which will include provisions substantially similar to the following:

**Assets**. The Assets will consist of substantially all of WFA's immovable property and buildings and improvements thereon and movable property.

**Sale Free and Clear**. The Assets to be transferred by WFA will be transferred free and clear of all liens, claims and interests, other than those expressly assumed by the purchaser or otherwise expressly permitted under the Purchase Agreement.

**Sale As Is, Where Is and Without Warranties**. The Assets will be sold on an "as is, where is" basis and without any representations or warranties, express or implied, of any kind, nature, or type.

**Closing Conditions**. In addition to certain other customary closing conditions, including conditions relating to bankruptcy court approvals.

**The Bidding and Sale Procedures**

18.

WFA has determined, in the exercise of its business judgment, that a sale pursuant to the Bidding and Sale Procedures will provide the best opportunity to maximize the reasonable value of the Assets.

19.

Credit bidding will be authorized in accordance with the Bidding and Sales Procedures.

## Notice Procedures

### 20.

WFA will seek an expedited hearing for the approval of the Billing and Sales Procedures and for the setting of the date, place and time of the Sale Hearing.[1]

### 21.

Given the expedited request, the Bankruptcy Court will set the objection deadline.

### 22.

Upon entry of an Order setting the date, place and time of the expedited hearing on the approval of the Bidding and Sale Procedures and setting a Sale Hearing, WFA will provide circulate the Order to: (i) the U.S. Trustee of the Middle District of Louisiana, 400 Poydras Street, Suite 2110, New Orleans, LA 70130-3238; (ii) counsel to Louisiana Economic Development: Daryl Manning & Leu Anne Lester Greco, Louisiana Economic Development, 1051 N. Third Street, Baton Rouge, LA 70802-5239; (iii) counsel for Amzak Management Capital, LLC: Barbra Parlin, Holland & Knight, LLP, 31 West 52nd Street, New York, New York 10019; (iv) counsel to Tembec Industries, Inc. and Tembec USA, LLC: Douglas S. Draper, Heller, Draper, Hayden, Patrick & Horn, L.L.C., 650 Poydras St., Suite 2500, New Orleans, LA 70130; and (v) counsel to Fluor Enterprises, Inc.: Joseph B. C. Kluttz,  K&L Gates LLP, Hearst Tower, 47th Floor, 214 North Tryon Street, Charlotte, NC 28202 ((ii) – (v) above are collectively referred to as, the "***Major Secured Creditors***"); (vi counsel to the Official Creditors' Committee: Omer Frederick Kuebel III, Locke Lord Bissell & Liddell, 601 Poydras St., Suite 2660, New Orleans, LA  70130; (vii) Parties requesting notice; (viii) Equity owners of WFA; and (ix) to other parties-in-interest through publication (collectively, the "***Notice Parties***").

---

[1] WFA will propose to the Bankruptcy Court for the Sale Hearing to be held on April 9, 2010 at 11:00 a.m. (CST).

23.

Upon entry on an Order approving the Bidding and Sales Procedure and setting the date, place and time of the Sale Hearing (the "***Bidding and Sale Procedures Order***"), WFA will provide notice substantially in the form proposed in Exhibit D attached hereto to the Notice Parties.

24.

In addition, as soon as reasonably practicable after entry of the Bidding and Sale Procedures Order, WFA shall publish notice, substantially in the form proposed in Exhibit E attached hereto, in such manner and to such parties as WFA determines, after consultation with its advisors, counsel to Major Secured Creditors and counsel to the Official Unsecured Creditors' Committee.

25.

All objections to the relief sought at in the Motion must be: (a) in writing; (b) signed by counsel or attested to by the objecting party; (c) in conformity with the Bankruptcy Rules and the Local Rules, (d) served in accordance with the Local Rules, or in accordance with an Order of the Bankruptcy Court, on: (i) counsel to WFA: Louis M. Phillips, Gordon, Arata, McCollam, Duplantis & Eagan, L.L.P., One American Place, 301 Main Street, Suite 1600, Baton Rouge, LA 70801-1916; (ii) counsel to the Major Secured Creditors; (iii) counsel to the Official Creditors' Committee: and (iv) the Office of the United States Trustee for the Middle District of Louisiana (these procedures collectively referred to as the "***General Objection Procedures***").

26.

Each objection shall state the legal and factual basis of such objection.

## 27.

Only those objections made in compliance with the General Objection Procedures will be considered by the Bankruptcy Court. The failure of any objecting person or entity to file its objections and in accordance with the General Objection Procedures will result in a bar to the assertion of any objection, and shall be deemed to be "consent" for purposes of Section 363(f).

## Assumption and Assignment of Contracts

## 28.

WFA is currently assembling a list of contracts related to the Assets. To the extent that WFA deems it necessary to assume and assign any contracts pursuant to Section 365 of the Bankruptcy Code in conjunction with the Sale Transaction, WFA will file a separate motion seeking approval for such assumptions and assignments to be heard at the Sale Hearing.

## Basis for Relief

## Sale of the Assets Is a Product of WFA's Reasonable Business Judgment

## 29.

Section 363(b)(1) of the Bankruptcy Code provides: "[t]he Trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Section 105(a) of the Bankruptcy Code provides in relevant part: "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

## 30.

Virtually all courts have held that approval of a proposed sale of assets of a debtor under section 363 of the Bankruptcy Code outside the ordinary course of business and prior to the confirmation of a plan of reorganization is appropriate if a court finds that the transaction

represents a reasonable business judgment on the part of the trustee or debtor-in-possession. See *In re Abbotts Dairies of Pa.*, 788 F.2d 143 (3d Cir. 1986); *In re Delaware & Hudson Ry. Co.*, 124 169, 176 (D. Del. 1991) (holding that the following non-exclusive list of factors may be considered by a court in determining whether there is a sound business purpose for an asset sale: "the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the effect of the proposed disposition of [sic] the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised values of the property; and whether the asset is decreasing or increasing in value"); *In re Stroud Ford, Inc.*, 164 B.R. 730, 732 (Bankr. M.D. Pa 1993); *Titusville Country Club v. Pennbank* (*In re Titusville Country Club*), 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Industrial Valley Refrigeration & Air Conditioning Supplies Inc.*, 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987); *In re Lionel Cor*p., 722 F.2d 1063 (2d Cir. 1983); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 391 (6th Cir. 1986); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); *In re Phoenix Steel Corp.*, 82 334, 335-36 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of a section 363 sale in a chapter 11 case are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith").

31.

The "sound business reason" test requires a trustee or debtor-in-possession to establish four elements: (1) that a sound business purpose justifies the sale of assets outside the ordinary course of business; (2) that accurate and reasonable notice has been provided to interested persons; (3) that the trustee or the debtor-in-possession has obtained a fair and reasonable price; and (4) good faith. *In re Titusville Country Club*, 128 B.R. at 399; *In re Sovereign Estates, Ltd.*,

104 B.R. 702, 704 (Bankr. E.D. Pa. 1989); *Phoenix Steel Corp.*, 82 B.R. at 335-36; *see also Stephens Indus.*, 789 F.2d at 390; *In re Lionel Corp.*, 722 F.2d at 1071.[2]

32.

Additionally, prior to and after enactment of the Bankruptcy Code, courts have permitted a proposed sale of all or substantially all assets of a trustee outside the ordinary course of business if such a sale is necessary to preserve the value of assets for the estate, its creditors or interest holders. *See In re Abbotts Dairies of Pa., Inc.*, 788 F.2d at 143; *In re Lionel Corp.*, 722 F.2d at 1063 (passim).

33.

The proposed procedures for the sale of WFA's Assets meet the "sound business reason" test. First, sound business purposes justify the Sale Transaction. WFA believes that a prompt sale of the Assets conducted pursuant to the Biding and Sale Procedures presents the best opportunity to realize the maximum value of the Assets for distribution to WFA's bankruptcy estate and its creditors. WFA further believes that any value available for creditors will be substantially reduced, if not wiped out, absent a timely Section 363 sale. *See In re Lionel Corp.*, 722 F.2d at 1071 (of factors for court to evaluate on motion under section 363(b), "most important perhaps, [is] whether the asset is increasing or decreasing in value").

34.

The Bidding and Sale Procedures proposed for the sale of the Assets also meet the other factors of the "sound business reason" test. As part of this Motion, WFA has sought to establish the Bidding and Sale Procedures for notice to creditors and other prospective bidders. Under the circumstances of this case, WFA submits that the notice period proposed satisfies the

---

[2] *Lionel's* "sound business purpose test" replaces an older rule that held that sales of substantially all of a debtor's assets prior to the confirmation of a plan of reorganization could only be made in emergencies, *i.e*, when the assets to be sold were "wasting" or perishable. *In re Lionel Corp.*, 722 F.2d at 1071.

requirements of the Bankruptcy Rules, *see* Bankruptcy Rule 2002, and provides sufficient time for parties in interest to submit objections to the proposed sale and for bidders to formulate and submit competing proposals.

35.

Finally, the proposed Bidding and Sale Procedures, which require WFA to consult with the Committee throughout the process, satisfies the good faith requirement of *Abbotts Dairies*. WFA submits that the sale process will be conducted in good faith, with arm's length negotiations with respect to the price and other terms of the sale of the Assets between WFA and the highest and best bidder.

36.

As set forth above, WFA has demonstrated compelling and sound business justifications for authorizing the sale of the Assets and the Bidding and Sale Procedures. The sale of the Assets pursuant to the Bidding and Sale Procedures is the only way for WFA to maximize the recoveries to creditors. Accordingly, WFA requests that the Bankruptcy Court approve the proposed Bidding and Sale Procedures and approve the Sale Transaction presented to the Bankruptcy Court at the Sale Hearing and authorize WFA to take such other steps as are necessary to consummate the Sale Transaction.

**The Proposed Sale Does Not Constitute a *Sub Rosa* Plan**

37.

The elements of a *sub rosa* plan are not present here as the sale of the Assets does not: (i) have the practical effect of dictating the terms of any future plan, (ii) disenfranchise voting rights under a plan, (iii) provide for the release of any claims against WFA, and (iv) leave little in the estate as all amounts received from the sale of the Assets will come into the estate and be dealt

with pursuant to a plan.

38.

The long history of bankruptcy reorganizations in this country is replete with examples of debtors, facing circumstances similar to those WFA faces here, obtaining court approval (often at the outset of the case) to sell substantially all of its assets prior to the process of confirming a plan, in order to preserve the maximum value for the sale of the assets being sold.  In *Piccadilly*, for example, the Supreme Court addressed a tax dispute that arose after the debtor received bankruptcy court approval for the sale of substantially all of its assets three months after it filed its chapter 11 case.  While Justice Breyer dissented from the majority's opinion in that case as to the proper tax treatment of the sale, he explained the justification for such sales at the outset of chapter 11 cases in appropriate circumstances: "[O]ne major reason why a transfer may take place before rather than after a plan is confirmed is that the preconfirmation bankruptcy process takes time…  And a firm (or its assets) may have more value (say, as a going concern) where sale takes place quickly…  Thus, an immediate sale can often make more revenue available to creditors or for reorganization of the remaining assets."  *Piccadilly*, 128 S. Ct. at 2342 (7-2 decision) (Breyer, J., dissenting) (citations omitted).

39.

Similarly, in *In re Trans World Airlines, Inc.*, 2001 WL 1820326 (Bankr. D. Del.), the court entered an order approving the sale of substantially all of TWA's assets at the very outset of the chapter 11 case where "TWA had no other strategic transaction available to it and had no other offer for value to which it could turn.  Nor could TWA rely on its self-help plan because TWA was unable to procure adequate capital infusion to implement that plan. Its only alternative was a free fall chapter 11 filing with the high likelihood of a piecemeal liquidation of the

enterprise." *TWA*, 2001 WL 1820326, at *4. In denying requests for a stay pending appeal of its sale order, the court found:

> [T]here is a substantial public interest in preserving the value of TWA as a going concern and facilitating a smooth sale of substantially all of TWA's assets to American. This includes the preservation of jobs for TWA's 20,000 employees, the economic benefits the continued presence of a major air carrier brings to the St. Louis region, and preserving consumer confidence in purchased TWA tickets American will assume under the sale… [T]he Sale Order implements the public interest that favors an organized rehabilitation (albeit here as only a part of a larger viable enterprise) of a financially distressed corporation which lies at the core of chapter 11. I conclude that the alternative to the Sale Order in this case is a free-fall chapter 11 leading to a liquidation with the subsequent substantial disruption of diverse economic relationships and likelihood of material adverse harm to a very broad spectrum of creditor constituencies.

*Id*. at *14.

40.

Piccadilly and TWA are just two relatively recent examples from the long history of reorganization courts exercising their authority to approve a sale of substantially all the assets of a debtor prior to the plan process to preserve the maximum value for the assets being sold.[3]

---

[3]  *See e.g.*, *In re Decora Indus., Inc.*, 2002 WL 32332749, *3 (D. Del.) (approving 363(f) sale of substantially all assets of chapter 11 debtor that had no source of future financing: "Debtors have two alternatives: (1) proceed with the Proposed Transaction, or (2) terminate business operations, employees and commence a liquidation of assets… All parties agree that an asset sale, as opposed to liquidation, will provide more money to the estate to satisfy the creditors' claims, as well as maintaining the going concern value of Debtors… [T]he Proposed Transaction, as with any sale, preserves the going-concern value of Debtors' business and the jobs of Debtors' employees."); *In re Med. Software Solutions*, 286 B.R. 431, 441 (Bankr. D. Utah 2002) (court approved sale of essentially all of debtor's assets at outset of chapter 11 case, finding (i) there would be substantial decrease in the value of the assets if not sold immediately, (ii) existing customers would be reluctant to purchase services and goods from company "in tenuous financial condition" and (iii) company would be "unsustainable as a going concern without additional capital - which is unavailable"); *In re Naron & Wagner, Chartered*, 88 B.R. 85, 90 (Bankr. D. Md. 1988) (approving sale of operating subsidiary where purchase price exceeded its estimated liquidation value and "failure to close the sale quickly will likely result in a halt of [subsidiary]'s continuous operations. If [subsidiary] cannot be sold as a going concern, there will be a substantial decrease in its value to the Debtor's estate."); *In re Airlines Transp. Carrier*, 129 F. Supp. 679, 683 (S.D. Cal. 1955) ("The salutary purpose of the Bankruptcy Act is to preserve the assets of the bankrupt for the benefit of the creditors. An order authorizing the sale of the assets of the bankrupt is intended to effectuate this purpose."); *In re Strunks Lane & Jellico Mountain Coal & Coke Co.*, 64 F. Supp. 731, 733 (E.D. Ky. 1946) ("'Judicial sales are an indispensable part of the machinery employed in administering bankrupt estates.' Public policy requires that nothing be done to impair confidence in the stability of such judicial sales, and bona fide purchasers should not be deprived of their rights without just cause.") (citation omitted).

When Congress enacted section 363 of the Bankruptcy Code as part of the bankruptcy Reform Act of 1978, it codified what reorganization courts already knew: a debtor must be permitted to sell its assets during the course of a reorganization case when necessary to preserve value for the estate. As detailed below, the Sale Transaction – the only alternative available to WFA to preserve its business as a going concern – meets the requirements of section 363 for the sale of the Assets free and clear of all liens and other interests in the assets to be sold.

41.

Courts applying 363(b) have routinely authorized the sale of a debtor's operating assets in advance of the plan process where the debtor did not have sufficient liquidity to continue operating, and the cessation of operations was likely or certain to result in the debtor's inability to realize the maximum value of the assets being sold.[4]

42.

That is exactly the situation that WFA now faces. Because delay in this instance will lead to an immediate and substantial loss in the value that is likely to be realized for the Assets, the Sale Transaction should be approved. WFA simply seeks the authority to sell the Assets with any enforceable encumbrances upon the Assets to attach to the proceeds of the sale, subject to

---

[4]      *See e.g.*, *Stephens Indus. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (approving sale of radio station where debtor lacked funds to continue operations and could lose broadcast license if station went off the air); *In re Brookfield Clothes, Inc.*, 31 B.R. 978 (S.D.N.Y. 1983) (approving sale of clothing manufacturer that had shut down due to lack of cash prior to petition date); *In re Lady H Coal Co., Inc.*, 193 B.R. 233, 244 (Bankr. S.D. W.Va. 1996) (approving sale of coal producer that could not fund operations and was nearly out of cash needed to operate pumps that prevented mines from flooding); *In re WBQ P'ship*, 189 B.R. 97, 102-03 (Bankr. E.D. Va. 1995) (approving sale of nursing homes as necessary to protect going concern value); *In re Weatherly Frozen Food Group, Inc.*, 149 B.R. 480, 483 (Bankr. N.D. Ohio 1992) (approving sale of ice cream producer that lacked cash needed to perform maintenance necessary to continue operations); *In re Titusville Country Club*, 128 B.R. 396, 400 (Bankr. W.D. Pa. 1991) (approving sale of golf course at start of golf season where debtor had inadequate funds to maintain course for the season); *In re Channel One Comm., Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990) (approving sale of radio station because of lack of funds needed to continue to operate); *Naron & Wagner, Chartered*, 88 B.R. at 90 (approving sale of computer business where debtor was unable to continue operations due to lack of liquidity); *In re Condere Corp.*, 228 B.R. 615, 629 (Bankr. S.D. Miss. 1998) (approving sale of tire plant that needed major capital infusion to reach necessary production levels); *In re Boogaart of Fla., Inc.*, 17 B.R. 480, 483 (Bankr. S.D. Fla. 1981) (approving liquidation of grocer operating at a continual loss).

the rights and defenses of WFA or any party in interest. WFA's sale of the Assets will not be a *sub rosa* plan.

**Sale of the Assets Should Be Free and Clear of Liens, Claims and Interests**

43.

Pursuant to section 363(f) of the Bankruptcy Code, WFA seeks authority to sell and transfer WFA's right, interest and title in the Assets to the Winning Bidder, free and clear of all liens, claims and interests except as set forth in the Purchase Agreement executed with the Winning Bidder, with such liens, claims, and interests to attach to the proceeds of the sale of the Assets, subject to any rights and defenses of WFA and other parties in interest with respect thereto. Section 363(f) of the Bankruptcy Code provides, in pertinent part:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any nterest in such property of an entity other than the estate, only if –
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). *See also In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) (holding that section 363(f) written in disjunctive; court may approve sale "free and clear" provided at least one of the requirements is met).

44.

With respect to each creditor asserting an interest, one or more of the standards set forth in Section 363(f)(1)-(5) will be satisfied. Those holders of interests who do not object or who withdraw their objections to the Sale or the Motion are deemed to have consented to the Motion and Sale pursuant to Bankruptcy Code § 363(f)(2). Those holders of interests who do object will fall within one or more of the other subsections of Bankruptcy Code Section 363(f).

45.

A sale free and clear of liens, claims and interests is necessary to maximize the value of the Assets. A sale of the Assets other than one free and clear of all interests would yield substantially less value for WFA's estate, with less certainty than a transaction free and clear of all interests. The Sale Transaction contemplated by the Purchase Agreement is in the best interests of WFA, its estate and creditors, and all other parties in interest. A sale free and clear of liens, claims and interests is particularly appropriate under the circumstances because any lien or claim in, to or against WFA's right, interest and title in the Assets that exists immediately prior to the closing of any sales will attach to the sale proceeds allocated to WFA with the same validity, priority, force and effect as it had at such time, subject to the rights and defenses of WFA or any party in interest. WFA submits that holders of liens, claims and interests, if any, will be adequately protected by the availability of the proceeds of the sale to satisfy their liens, claims and interests.

46.

WFA seeks to sell the Assets free and clear of any and all successor liability claims. WFA submits that the additional publication notice being provided is sufficient notice to allow the sale of the Assets free and clear of any successor liability clams. *See Charter Crude Oil Co.*

*v. Petroleos Mexicanois*, 125 B.R. 650, 655 (M.D. Fla. 1991) ("[P]ublication notice is legally adequate notice to unknown creditors, whether they be sophisticated trade creditors of individual tort claimants.") and *In re Thomas McKinnon Sec., Inc.*, 159 B.R. 146 (Bankr. S.D. N.Y. 1993) (citing *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306 (1950) (same).

**The Sale Procedures Are Appropriate Under the Circumstances**

47.

A debtor may sell, after notice and a hearing, its assets outside the ordinary course of business. 11 U.S.C. § 363. Generally, to obtain approval of a proposed sale of assets, a debtor must demonstrate that the "proffered purchase price is the highest and best offer" under the circumstances of the case. *See, e.g., Four B. Corp. v. Food Barn Stores, Inc.* (*In re Food Barn Stores, Inc.*), 107 F.3d 558, 564-65 (8th Cir. 1997) (holding that in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand); *In re Integrated Res*., 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the Debtors' duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *Cello Bay Co. v. Champion Int'l Corn.* (*In re Atlanta Packaging Prods., Inc.*), 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988)).

48.

The implementation of competitive sale procedures to facilitate the sale of a debtor's assets outside of the ordinary course of a debtor's business is routinely approved by bankruptcy courts as a means of ensuring that such sale will generate the highest and best return for a debtor's estate. WFA submits that the opportunity for competitive bidding embodied in the Bidding and Sale Procedures will generate the highest or otherwise best offer for the Assets and therefore is designed to maximize the value of the Assets.

49.

WFA believes that the exploration of a potential sale of the Assets through a prompt sale process is the best way to maximize the value of the Assets for the benefit of their estates, creditors and other stakeholders. Accordingly, WFA, in its business judgment, has concluded that: (i) a prompt sale of the Assets is the best way to maximize value for these estates, and (ii) the proposed Bidding and Sale Procedures described herein are fair, reasonable, and appropriate and are designed to maximize recovery with respect to the sale of the Assets.

**Notice of the Proposed Sale Is Reasonable Under the Circumstances**

50.

WFA submits that the Notice Procedures as set forth above are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Bidding and Sale Procedures.

**Waiver of Automatic Ten-Day Stay Under Bankruptcy Rule 6004(h)**

51.

Pursuant to Bankruptcy Rule 6004(h), unless the Court orders otherwise, all orders authorizing the sale of property pursuant to Section 363 are automatically stayed for ten days after entry of the order. The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented. *See* Advisory Committee Notes to Rule 6004(h).

52.

Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 10-day stay period, commentators agree that the 10-day stay period should be eliminated to allow a sale or other

transaction to close immediately where there has been no objection to the procedure. *See generally* 10 *Collier on Bankruptcy* ¶ 6004.09 (15th ed. 1999). Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time necessary to file such appeal. *Id.*

53.

Because of the potentially diminishing value of the Assets, WFA must close the Sale Transaction promptly after all closing conditions have been met or waived. Thus, waiver of any applicable stay is appropriate in this circumstance.

**Bankruptcy Rule 6003 Statement**

54.

Although, WFA seeks an expedited hearing on the establishment of procedures to sell the Assets, the actual sale of the Assets will not occur within twenty-one (21) days after the Petition Date. As such, WFA is in compliance with Rule 6003.

**Notice/Previous Requests**

55.

Notice of the Motion has been given via first-class mail, facsimile, electronic transmission, hand delivery or overnight mail to (i) the U.S. Trustee; (ii) counsel to the Committee; and (iii) the general service list established in this chapter 11 case pursuant to Bankruptcy Rule 2002. WFA submits that under the circumstances no other or further notice is necessary.

56.

No previous request for the relief sought herein has been made by WFA to this or any other court.

**Memorandum of Law**

57.

WFA requests that this Court deem the contents of this Motion sufficient for purposes of satisfying the Memorandum of Law requirement in Local Bankruptcy Rule 9013-2 of the Local Rules for the United States Bankruptcy Court for the Middle District of Louisiana. This Motion includes citations to applicable authorities so as to afford an understanding of the issues raised by this Motion.

**WHEREFORE**, WFA requests that the relief requested herein be granted, and for such other relief as this Court may deem appropriate.

February 23, 2010.                    By: **/s/ Louis M. Phillips**
                                          Louis M. Phillips (La. Bar No. 10505)
                                          Peter A. Kopfinger (La. Bar No. 20904)
                                          Ryan J. Richmond (La. Bar No. 30688)

                                     **GORDON, ARATA, MCCOLLAM,
                                       DUPLANTIS & EAGAN, L.L.P.**
                                     One American Place
                                     301 Main Street, Suite 1600
                                     Baton Rouge, LA 70801-1916
                                     Telephone: (225) 381-9643
                                     Facsimile: (225) 336-9763
                                     Email: lphillips@gordonarata.com
                                     Email: pkopfinger@gordonarata.com
                                     Email: rrichmond@gordonarata.com

                                     *Attorneys for the debtor-in-possession,
                                     West Feliciana Acquisition, L.L.C.*