

**Pöyry Forest Industry Consulting Inc.**
580 White Plains Road, 3rd floor
Tarrytown, NY 10591-5183
USA
Tel. +1 914 332 4000
Fax +1 914 332 4411

Date January 29, 2010

Page 1 (2)

Mr. Allen Byrd
West Feliciana Acquisition, LLC
2105 La. Highway 964
70775 St. Francisville, LA


Dear Allen,

This letter is to confirm Pöyry's interest in conducting the sale process for the St. Francisville mill and to outline the key elements of our proposal. We understand you and your colleagues are determined to launch an efficient process that will lead to a transaction within a few months.

As you know, Pöyry has a very good understanding of the St. Francisville site, its potential development opportunities and the logical buyer universe. Consequently, we could complete preparation of the marketing plan and supporting materials quickly and be "in the market" within a few weeks.

I have attached a few slides (Attachment I) that illustrate Pöyry's approach to selling assets or businesses along with comments on how this methodology differs from that of traditional investment banks. Our approach is designed to capitalize on Pöyry's knowledge and position as a leading advisor to the global forest products' industry.

In summary, the key elements of our proposal are:

- **Buyer Universe**

    Based on the recent investments at St. Francisville and its current product capabilities, Pöyry proposes to focus on two market segments – strategic players in the packaging industry value chain and financial investors. If necessary, this engagement (scope and terms) could be revised later to include prospects in other industry sectors.

- **Work Plan (details in Attachment I)**

    Step 1 - Preparing for the transaction, developing selling materials and listing prospective buyers will take approximately four weeks. This will include a site visit by Pöyry's technical team to update our understanding of mill configuration and asset condition, to review operating and financial performance and to draw conclusions about development options. This assessment provides critical input to the value proposition developed for each prospective buyer.

    Step 2 – Pöyry will establish contact with prospective buyers and distribute a Confidential Information Memorandum to each party who has signed a Confidentiality Agreement. Pöyry will then focus on expediting due diligence work and helping prospects meet the deadlines for non-binding expressions of interest and final offers.

Step 3 – Pöyry will manage and facilitate the negotiations with parties who have submitted definitive offers with the objective of achieving the best possible transaction price and terms.

- **Commercial Terms**

    – Fixed Work Fee – USD 100,000 – for preparing the transaction and developing the selling materials (Step 1).

    – Time & Materials – professional fees will not exceed USD 50,000 per month without the permission of the client - for direct sales, management of buyer due diligence and facilitation of negotiations (Steps 2 & 3)

    – Reimbursable expenses – at cost

    – Success Fee – the following events will trigger payment of a Success Fee to Pöyry:

        1. A definitive offer(s) is received from a new investor(s) at a price equal to or greater than USD 6 million. In this case, Pöyry's Success Fee is USD 300,000.

        2. A definitive offer(s) is received from a new investor(s) at a price less than USD 6 million. In this case, Pöyry's Success Fee is USD 100,000

    – Payment:

        - Fixed Work Fee – 50% due February 19, 2010, 50% due Friday February 26, 2010

        - Time & Materials – USD 50,000 due at the beginning of each month starting with March 1, 2010. Unused amounts will be repaid at month end or applied to the advance for the following month.

        - Reimbursable expenses– build as incurred and due upon receipt of invoice date.

        - Success Fee – due upon transaction closing or court decision regarding disposition of assets

- **Management Consulting Agreement**

    Attachment II provides Pöyry's terms and conditions for our services

Thank you for the opportunity to present our proposal to sell St. Francisville. We look forward to any questions you or your colleagues may have and to getting started if that is your decision.

Sincerely,


Norman Lord
Phone: (514) 233-5954
Email: Norman.lord@poyry

Proposal : 23P13519



# Attachment I
# Pöyry's Divestiture Service

Proposal 23P13519

# Pöyry's divestiture service

**Step 1**

**Step 2**

**Step 3**

> **Prepare for transaction**

> **Develop selling materials**

> **Launch marketing plan**

> **Manage negotiation and bidding**

- Update understanding of assets
- Identify and prioritize logical owners
- Conduct valuation analyses
- Perform seller due diligence
- Consider alternative business and restructuring strategies

- Assess improvement potential
- Understand the priorities and needs of potential buyers
- Prepare "teasers", CIM and presentations tailored to each potential acquirer which will include:
  - Background to divestiture
  - Market rationale
  - Investment Thesis
  - Fiber Supply
  - Technical concept
  - Cost competitiveness

- Leverage Poyry's network of high level industry contacts
- Establish contact with prospects
- Organize and manage site visits
- Complete management presentations
- Prepare & manage data room

- Develop negotiation strategy
- Assess buyer strategy and understand alternative
- Facilitate negotiation
- Solicit bids from potential buyers

3



# Pöyry's divestiture service



**Prepare for transaction**
- Update understanding of assets ①
- Identify and prioritize logical owners ②
- Conduct valuation analyses ②
- Perform seller due diligence ③
- Consider alternative business and restructuring strategies

**Develop selling materials** ④
- Assess improvement potential
- Understand the priorities and needs of potential buyers ⑤
- Prepare "teasers", CIM and presentations tailored to each potential acquirer which will include: ⑥
  - Background to

**Launch marketing plan** ⑦
- Leverage Poyry's network of high level industry contacts
- Establish contact with prospects
- Organize and manage site visits ⑧
- Complete management presentations

**Manage negotiation and bidding**
- Develop negotiation strategy
- Assess buyer strategy and understand alternative
- Facilitate negotiation
- Solicit bids from potential buyers

1. **Pöyry's can target the most logical owners**
2. **Pöyry goes beyond multiples – identifies buyer-specific value**
3. **Pöyry has in-house expertise to conduct seller due diligence**
4. **Pöyry identifies & markets the improvement potential of the assets**
5. **Pöyry can address potential buyers' questions and concerns**
6. **Pöyry's customized, targeted marketing approach saves time**
7. **Pöyry has access to a global industry contacts**
8. **Pöyry runs efficient & effective site visits**





# Attachment II

## Management Consulting Agreement



# Management Consulting Agreement

Pöyry Forest Industry Consulting Inc., 580 White Plains Road, 3rd Floor, Tarrytown, N.Y. 10591-5183, USA (the "Consultant") and West Feliciana Acquisition, LLC (the "Client") have today entered into the following agreement (the "Agreement").

## 1 ENGAGEMENT

By this Agreement the Client engages the Consultant to provide consultancy services (the "Services") in the project entitled St Francisville Sales Mandate. The scope and details of the consultancy services are set out in the attached proposal (the "Proposal", Enclosure 1).

## 2 THE CONSULTANT'S OBLIGATIONS

### 2.1 Duties of the Consultant

The Consultant shall deliver the Services set out in the Proposal in accordance with this Agreement. The Consultant shall exercise skill and diligence in the performance of the Services and observe recognized principles of professional ethics and respect the laws and customs in the country where the Services are rendered.

Each Proposal shall be deemed to constitute a separate work project under this Agreement. No modification may be made to any Proposal without written consent of the parties.

### 2.2 Rendering of the Services

The Consultant may supply written advice or confirm oral advice in writing or deliver a final written report or make an oral presentation on completion of the Services. Prior to completion of the Services the Consultant may supply oral, draft, and interim advice in reports or presentations but in such circumstances the Consultant's written advice or final written report shall take precedence. The Client shall place no reliance on any draft or interim advice or report or oral presentation. The Consultant shall be under no obligation in any circumstances to update any advice, report or any product of the Services, oral or written, for events taking place after the advice, report or product concerned has been issued in final form.

Any product of the Services released to the Client in any form or medium shall be supplied by the Consultant on the basis that it will inure to the benefit of the Client only, and that it shall not be copied, referred to or disclosed, in whole or in part (save for internal purposes of the Client), to a third party and/or for any purpose not envisaged by this Agreement without the Consultant's prior written consent. No advice, opinion, statement of expectation, forecast or recommendation supplied by the Consultant as a part of the Services shall be deemed to constitute a representation or warranty with regard to future events and circumstances.

### 2.3 Professional Team

Where the Consultant has named in the Proposal or otherwise the individuals in the team rendering the Services (the "Professional Team"), the Consultant shall use its best endeavours to ensure that the same individuals actually render the Services. The Consultant may, however, by written notice to the Client substitute the individuals with others of equal or similar skills. Notwithstanding the foregoing, the Professional Team named in the Proposal or otherwise is subject to change until this Agreement has been duly signed.

### 2.4 Ownership of Intellectual Property; Rights to Work Product

The Consultant shall retain sole and exclusive ownership and all intellectual property rights (including but not limited to copyright) of all (a) know-how, computer software, computer programs, drafts, documents, information, material, inventions, patents or designs owned by the Consultant which the Consultant may use to provide the Services, and (b) the Work Product (as defined below). The Client shall have a non-transferable, nonexclusive, royalty-free and perpetual license to use any and all Work Product developed pursuant to this Agreement for its business use, which shall include use by the Client and its affiliates. "Work Product" means any code (whether source or compiled), processes, documentation, records, training materials, designs, drawings, specifications, drafts and data developed by the Consultant pursuant to this Agreement. The Client shall retain sole and exclusive ownership of all know-how, computer software, computer programs, drafts, documents, inventions, copyrights, patents or designs owned by the Client which the Consultant may use to provide the Services ("Client Intellectual Property"); provided, however, the Consultant shall have a non-exclusive, royalty-free and perpetual license to use any and all Client Intellectual Property in the Work Product.

## 3 REMUNERATION

The Proposal by the Consultant to the Client shall specify whether the time based remuneration as defined in Section 3.1 or the fixed price remuneration as defined in Section 3.2 hereinunder shall apply.

### 3.1 Time Based Remuneration

The Consultant charges for the Services a professional fee based on man-days consumed, plus direct expenses. The fee is calculated in accordance with the current service rates of the Consultant in effect during the execution of the Services for the various categories of personnel used by the Consultant. Special services (legal consultation, reports, expert's opinion, and similar) and services of very short duration are charged at special rates quoted separately for each case. Additionally the Consultant charges for travel and other direct non-salary expenses and administration as defined in Section 3.3 hereinbelow unless otherwise agreed upon.

### 3.2 Fixed Price Remuneration

The Consultant charges a fixed price for the Services as specified in the Proposal. Additionally the Consultant charges for travel and other direct non-salary expenses and administration defined in Section 3.3 hereinbelow unless otherwise agreed upon. If the scope of the Services is altered or the performance delayed by reasons not attributable to the Consultant, the Consultant has the right to charge the Client for such additional services or time consumption at the current rates of the Consultant.

### 3.3 Expenses

The Consultant charges for travel and other direct non-salary expenses at cost as defined below;

a) Direct expenses for air, ground and sea transportation, taxi, rental car, use of personal or company car and all other travel expenses directly arising out of, or caused by the Services;
b) Subsistence: direct expenses for hotel or other accommodation including breakfast, plus a fixed per diem allowance;
c) All other expenses directly related to the Services, present or future, including but not limited to all kinds of income, sales and other taxes including tax withholdings, licenses and permits, official inspections, expenses for meeting legal requirements and regulations and other similar dues, unless carried directly by the Client.

Additionally the Consultant charges an Administration Fee of 15% of the remuneration amount referred to in 3.1 and 3.2.



# Management Consulting Agreement (cont'd)

**3.4 Terms of Payment**

Invoices are issued by the Consultant monthly or as specifically agreed according to a payment schedule approved by the Client and the Consultant. The invoiced amount shall be available on the bank account of the Consultant within fourteen (14) days from date of invoice, in the currency prescribed, without any deduction of transfer or other charges. The interest on overdue payments shall be the reference rate of interest confirmed by the Central Bank of the Consultant's home country plus ten percentage units.

Invoices issued by the Consultant are exclusive of any taxes, withholdings, customs duties, bank charges or similar dues or impositions. In case such taxes or other dues are imposed on the Consultant by the authorities in the Client's country or elsewhere then such costs will be charged further to the Client.

**4 LIABILITY**

**4.1 Warranty; Claims**

The Consultant shall perform the Services in accordance with the standards of skill, care and diligence generally practiced by members of the management consultancy profession currently operating in the region under similar conditions. In the event that the Consultant makes a mistake or error in the provision of the Services and, provided that the Consultant gets notice of such error or mistake no later than six months after the date of completion of the Services to the Client, the Consultant shall, at its sole discretion either (a) exert commercially reasonably efforts to take such appropriate action to correct the mistake or error, at no expense to the Client, or (b) upon submission by the Client of documented direct damages resulting directly from the Consultant's mistake or error, indemnify the Client for such damages directly caused by the Consultant's mistake or error pursuant to Section 4.2 below.

EXCEPT AS EXPRESSLY PROVIDED IN THIS SECTION 4.1, NO EXPRESS OR IMPLIED WARRANTIES ARE MADE WITH RESPECT TO THE SERVICES TO BE SUPPLIED BY THE CONSULTANT HEREUNDER, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. THE REMEDY DESCRIBED IN SECTION 4.1 SHALL BE THE CONSULTANT'S SOLE OBLIGATION AND THE CLIENT'S EXCLUSIVE REMEDY WITH RESPECT TO ANY BREACH OF THE CONSULTANT'S WARRANTIES UNDER THIS SECTION 4.1.

**4.2 Limitation of Liability**

Notwithstanding any provision contained herein, in no event shall the Consultant have any liability under or in relation to this Agreement (including any breach thereof) or Services for any indirect, consequential, special, incidental or punitive damages of any nature whatsoever such as but not limited to damages arising out of or pertaining to loss of use of property, loss of profits or other revenue, interest, loss of product, increased expenses or business interruption, however the same may be caused. Furthermore, the Consultant has no liability for damages which are caused by reasons or circumstances not attributable to the Consultant or which are beyond the reasonable control of the Consultant. Under no circumstances shall the Consultant's total aggregate liability under or in relation to this Agreement (including any breach thereof) or Services for any reason exceed the amount paid to the Consultant by the Client under this Agreement. The liability of the Consultant under or in relation to this Agreement or Services shall in all cases expire upon such date falling six months after the date of completion of the Services or such date falling twelve months after the date of this Agreement, whichever is earlier. All claims to the Consultant shall be presented immediately upon detection, however before the expiry of the liability period.

The Consultant shall indemnify and hold the Client, its employees and directors harmless from any claim, expense, loss or damage including reasonable attorney's fees, incurred by the Client which result from any claim by third parties that the Work Product infringes the third party's patent, trademark or copyright provided such alleged infringement does not result from either (a) the Client's modification of the Work Product or (b) the Client's use of the Work Product for other purposes than defined in this Agreement in combination with any software, hardware or data not provided by or approved by the Consultant. The Consultant shall have no obligations under this paragraph to the Client unless (i) the Client promptly notifies the Consultant in writing of any suits, claims or demands against the Client for which the Consultant is responsible, (ii) the Client gives the Consultant full opportunity and authority to assume the sole defence of and settle such suits and (iii) the Client furnishes to the Consultant upon request all information and assistance available to the Client for defence against such suit, claim or demand.

**4.3 Insurance**

To cover the Consultant's liability with respect to the activities under this Agreement the Consultant shall keep in effect a general professional indemnity insurance for consulting undertakings. Upon request by the Client, a copy of an insurance certificate evidencing such insurance shall be made available to the Client.

**5 MISCELLANEOUS**

**5.1 Confidentiality**

During the term of this Agreement and two (2) years thereafter the Consultant undertakes to keep confidential sensitive information relating to the Client's business or affairs where such information has been identified as confidential by the Client ("Confidential Information").

The Consultant shall not make use of such Confidential Information for purposes outside the scope of the Services without the prior written consent by the Client. The provisions of this Section 5.1 shall not apply to information that; (a) is or becomes public knowledge otherwise than through the Consultant's breach of this confidentiality undertaking; or (b) was obtained by the Consultant from a third party having no obligation of confidentiality with respect to such information; or (c) can be shown to be known by the Consultant by written records made prior to disclosure by the Client; or (d) in such circumstances where a competent court or law requires disclosure of Confidential Information.

**5.2 Conflict of Interests**

The Professional Team rendering the Services shall not be required, expected or deemed to have knowledge of any information known to their colleagues within the Consultant's organization, which is not known to them personally, or required to obtain such information. The Professional Team shall not be required to make use of or to disclose any information whether known to them or to their colleagues, which is confidential to another client. There are and shall continue to be mechanisms operating within the Consultant's organization and within Pöyry Plc designated to facilitate the protection of each client's interests through the use of one or several of the following measures: separate professional teams, geographical separation, operational independence, separate computer servers and mail systems.

The Consultant may be approached to advise another party or parties who are in dispute with the Client, or to advise or represent interests of a party whose interests are opposed to or competing with the Client's interests. The Consultant and the Client undertake to promptly



# Management Consulting Agreement (cont'd)

inform each other should there be a risk of competing engagements. The Consultant shall not permit any member of the Professional Team to accept an engagement resulting in a simultaneously pending competing engagement.

**5.3 The Client's Duty to Assist**

In order to permit the Consultant to perform the Services in accordance with the Proposal and without inconvenience, the Client shall timely perform its obligations set forth herein and in the Proposal, including, but not limited to supplying the Consultant with all information, assistance and access to the Client staff, documentation, hardware and software in the Client's possession, custody or under the Client's control having a bearing on the Services. The Client shall inform the Consultant of any information or developments which may come to the Client's notice and which may have a bearing on the Services.

**5.4 Independent Contractors**

The Consultant agrees that it will be providing Services as an independent contractor and any employees of the Consultant involved in providing the Services shall remain only employed with the Consultant and not with the Client.

**5.5 No Recruitment**

The Client undertakes not to enter into an employment or similar agreement with any member of the Consultant's professional team for a period of 6 months' from the time of completion of the Services agreed upon herein. Should the Client enter into an employment or similar agreement with a member of the Consultant's professional team, then the Client shall pay the Consultant a compensation equal to 60 times the man day fee rate agreed for such a member of the professional team.

**5.6 Subcontracting**

The Consultant shall be entitled to subcontract or to consult third parties for specialist tasks whenever the Consultant considers it appropriate. The liability of the Consultant to the Client shall, however, not be diminished, except in cases where the persons executing such work are liable by law.

**5.7 Assignment**

Subject to Section 5.6 hereunder, neither party may assign or transfer any of its rights or obligations under this Agreement to any third party without the prior written consent of the other party, provided that the Consultant shall be entitled to assign or transfer all or any of its rights (but not its obligations) under this Agreement to receive payment of any sum of money to any third party without having to obtain the consent of the Client.

**5.8 Integration**

This Agreement with enclosures contains the entire agreement between the parties and supersedes all other understandings and negotiations, whether oral, written or implied, set forth with respect to the subject matter of this Agreement.

**5.9 Severability**

If any term of condition contained herein is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable, the remainder of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

**5.10 Force Majeure**

No delay in or failure of performance by either party, other than payment of money, shall constitute default hereunder if and to the extent such delay or failure is caused by any force majeure occurrence beyond the reasonable control of the party otherwise required to perform and which by the exercise of reasonable diligence by said party could not have been prevented. Such force majeure events are, but not limited to, the following: fire, earthquake, lightning and other Acts-of-God, as well as industrial disputes, acts of terrorism, strikes, sabotage, epidemics, war, riot, mobilization and similar frustrations. In such circumstances, the party affected by force majeure shall have a duty to inform the other party within a reasonable period, not exceeding seven business days, from the date that force majeure is claimed.

**5.11 Suspension and Termination**

Both the Consultant and the Client may terminate this Agreement or suspend its operation by giving 30 days' prior notice in writing to the other party. Any termination of this Agreement shall be without prejudice to the rights of either party, which may have accrued up to the date of the termination.

**5.12 Arbitration**

All claims, disputes, controversies and causes of action relating to or arising out of this Agreement shall be governed by the dispute resolution provisions of this Section. For dispute or controversy arisen under or in connection with this Agreement, the Consultant and the Client mutually agree first to try in good faith to settle the dispute or controversy. Any party to this Agreement may initiate the negotiation process by written notice to the other, identifying the dispute or controversy and the desire for negotiation. If the parties have not resolved the dispute or controversy by direct negotiations within 60 days of such notice, any party may initiate arbitration as herein provided. All such claims, disputes, controversies and causes of action relating to or arising out of this Agreement shall be determined by binding arbitration before a single arbitrator administrated by the American Arbitration Association in accordance with its International Arbitration Rules. The place of arbitration shall be New York, New York. The language of arbitration shall be English. Each of the Consultant and the Client submits to the jurisdiction of any state or federal court located in New York, waives any argument for a different forum or venue, and agrees to enforcement in the U.S. or elsewhere of any award rendered by the arbitrator or court to this Agreement.

**5.13 Governing Law**

This Agreement shall be governed by and interpreted in accordance with the substantive laws of New York excluding its conflict of law rules.

This Agreement is executed in two original counterparts, one being retained by each party hereto.

| | |
|---|---|
| New York, [Date] | [Place and date] |
| Pöyry Forest Industry Consulting Inc. | West Feliciana Acquisition, LLC |
| | |
| _____ | _____ |
| Nroman Lord | [name of authorized signatory] |
| | |
| _____ | _____ |
| [name of authorized signatory] | [name of authorized signatory] |
23P13519

3

