# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In re:** | § | **CASE NO. 10-10053** |
| | § | |
| **WEST FELICIANA ACQUISITION, L.L.C.** | § | |
| | § | |
| *Debtor* | § | |
| | § | **CHAPTER 11** |
| | § | |

## LIMITED OPPOSITION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTOR'S MOTION, WITH SUPPORTING AUTHORITY, FOR ORDERS (I)(A) AUTHORIZING AND APPROVING BIDDING AND SALE PROCEDURES (B) AUTHORIZING AND APPROVING NOTICE PROCEDURES AND SETTING A HEARING DATE FOR SALE HEARING, (II) AUTHORIZING THE IN GLOBO SALE FREE AND CLEAR OF ALL LIENS, CLAIMS AND INTERESTS AND (III) FOR RELATED RELIEF

**NOW INTO COURT**, through undersigned counsel, comes the Official Committee of Unsecured Creditors (the "Committee"), through their undersigned counsel, and files this Limited Opposition ("Limited Opposition") to the Motion (the "Sale Motion") of West Feliciana Acquisition, LLC (the "Debtor") for Orders (I)(a) Authorizing and Approving Bidding and Sale Procedures (B) Authorizing And Approving Notice Procedures And Setting A Hearing Date For Sale Hearing, (II) Authorizing The In Globo Sale Free And Clear Of All Liens, Claims And Interests And (III) For Related Relief (Docket #138).

**I.     INTRODUCTION AND SUMMARY OF LIMITED OPPOSITION**

On Tuesday, February 23, 2010, the Debtor filed the Sale Motion, with an expedited hearing to be set for Friday, February 26, 2010. The Committee will endeavor to resolve as many of the issues raised in this Limited Objection as possible in advance of the hearing on this matter.

In this Limited Opposition, the Committee respectfully raises the following concerns with certain provisions of the bidding and sale procedures submitted with the Sale Motion:

1

- The Debtor's process for soliciting prospective bidders and conducting the sale process is not sufficiently defined.

- The Debtor's proposed sale milestones and deadlines may not provide adequate time for due diligence and bid formulation.

- The form or terms of the Purchase Agreement to be used have not been provided.

- Under the circumstances, the bidder requirements that bids have no due diligence or financing contingencies may be unrealistic.

- There is no mechanism to resolve potential disputes that may arise as to whether bids are qualified and regarding the selection of the leading bid.

- The Committee may have some limited concerns with the credit bidding procedure.

- The purchase price may need to be allocated between immovable and movable property.

- It is premature at this time to approve the proposed sale order.

## II. DISCUSSION

### A. Debtor's Process to Solicit Bidders and Conduct Sale Process

Respectfully, the Committee believes that the process for soliciting potential bidders and facilitating due diligence has not been sufficiently defined in the Sale Motion, the bid procedures attached to the Sale Motion (Exhibit "C" to the Sale Motion, the "Bidding Procedures"), and related papers. Specifically, there is almost no detail or discussion concerning how the Debtor plans to identify and solicit prospective bidders, and facilitate their due diligence. The Bidding Procedures only contain vague statements that WFA will "determine the most effective manner in which to market the Assets" and will "staff a data room." (Bidding Procedures, p. 3 under "WFA Sale Efforts")

The Committee believes that the Debtor should provide detail on the following specific questions before the Sale Motion is approved:

- What is the process and criteria for identifying prospective bidders?

- What is the process and timeline for completing the "deal book" including initial information to be sent to prospective bidders?

- Will the "deal book" and "data room" contain all information developed during the mill's previous sale process in 2008-2009 (including, for example, environmental reports and other due diligence materials). If not, why not?[1]

- What timing for a sale process will ensure proper market exposure?

The Committee submits that the Sale Motion should not be approved until the Debtor answers these questions and commits to a process that will provide the best chance for producing the highest and best sale price.

In addition, the Committee objects to the provision of the Bidding Procedures which excludes potential bidders at the outset (excluding them from even conducting due diligence) if any such potential bidder has a "financing contingency." (Bidding Procedures, p. 3 under heading "Potential Bidder/Participation Documents) Under the circumstances, where the Debtor should be casting the widest possible net to find potential bidders, this is much too stringent. (Financing contingencies are discussed further below).

### B. The Debtor's Milestones And Deadlines May Not Provide for Adequate Time for Due Diligence and Bid Formulation

The Debtor's contemplated sale process is extremely compressed (and yet, as discussed below, the Bidding Procedures require that bidders have no due diligence or financing contingencies). The Committee recognizes that the parties are constrained by the 90-day

---

[1] The Committee understands that the Debtor's broker Poyry conducted the previous sale transaction of the Debtor's assets in 2008-2009 that resulted in the sale to the current equity owners. It should be the case that substantial information and materials from that last sale are available and can (and should) be integrated into materials to be sent to prospective bidders and used in due diligence.

3

termination date under the debtor-in-possession financing (April 17, 2010). However, within this framework, the Debtor has proposed additional deadlines and milestones that may unnecessarily compress the sale process even further and may make it difficult to solicit bids. The Debtor has proposed the following deadlines and milestones:

- <u>March 8</u>: Bidder due diligence <u>begins</u>.

- <u>March 26</u>: Bid deadline to submit irrevocable bid with no due diligence or financing contingencies.

- <u>March 26 through April 2</u>: Period during which Debtor may negotiate with bidders to "clarify or enhance" bids.

- <u>April 7</u>: Designation of Lead Bidder.

- <u>April 9</u>: Sale hearing.

The Committee is concerned that the above schedule does not provide for the maximum amount of time for the most important activity that should take place in advance of the sale – solicitation of prospective bidders and completion of their due diligence. The above schedule is essentially a six-week schedule (starting March 1 and ending on April 9). <u>Less than three weeks of that schedule (March 8 to March 26) would be dedicated to soliciting bidders and allowing interested bidders to conduct due diligence</u>. March 1 to March 8 would essentially be lost time before due diligence can even begin. It is unclear why an entire week (March 26 to April 2) is needed to "clarify or enhance" bids. Between April 2 and the sale hearing, another entire week will be lost while a lead bidder is designated (it is not clear why this will take a week, either).

The Committee respectfully submits that the timeline should be adjusted to allow for the longest possible due diligence and solicitation period. The Committee suggests the following (subject to further discussions with the Debtor and its broker):

4

| Debtor's Proposed Date | Committee's Proposed Adjustment | |
|---|---|---|
| March 8 | March 1 | Bidder due diligence begins. |
| March 26 | April 2 | Bid deadline to submit irrevocable bid with no due diligence or financing contingencies. |
| March 26 to April 2 | April 2 to April 7 | Period during which Debtor may negotiate with bidders to "clarify or enhance" bids. |
| April 7 | April 7 | Designation of Lead Bidder (See additional discussion below). |
| April 9 | April 9 | Sale hearing. |

### C. Purchase Agreement Form

The Bidding Procedures provide that a form of purchase agreement will be provided by the Debtor to potential bidders, and that the Debtor may reject bids that "in WFA's business judgment materially deviate[] from the terms and conditions of the Purchase Agreement." (Bidding Procedures, p. 5) Therefore, the terms of that form purchase agreement may be critically important to bidder qualification and, depending on the terms, may chill or potentially enhance bidding. However, such terms are undefined and no form is attached to the Sale Motion. The Committee submits that the form of purchase agreement should be at a minimum attached to the Sale Order, and that a standard "vanilla" form should be used that will not chill bidding.

### D. Bidder Qualifications

The Bidding Procedures provide that in order to be a "qualified" bid, the bid made on or before March 26, 2010 must not be subject to "unperformed due diligence" or "obtaining financing." (Bidding Procedures, p. 4 under heading "Bid Requirements/Qualified Bidder") The Committee is concerned that, under the circumstances, these requirements are too stringent. As

5

discussed above, the Debtor contemplates that due diligence would not even begin until March 8, 2010. (Bidding Procedures, p. 4 under heading "Due Diligence"). That would allow for bidders to conduct due diligence for <u>less than three weeks</u> before the bid deadline. Under that compressed timeframe, the Committee is concerned that no bidder may be able to submit an unconditional bid. Under the circumstances, the Committee submits that bidders should be able to submit bids with limited financing or due diligence contingencies and remain "qualified" bidders.

In addition, the Bidding Procedures provide that in order to be a "qualified" bid, the bid must "contain other information reasonably requested by WFA." (Bidding Procedures, p. 5) The Committee submits that this arbitrary condition be stricken. If the Debtor believes that additional information will be required in the bids, the Debtor should set forth that required information now and all such requirements should be clearly set forth in the Bidding Procedures.

### E. **Designation of Bids as "Qualified" and Selection of Highest/Best Bid**

The Debtor's Bidding Procedures provide that the Debtor will decide whether bids are qualified and will designate the highest and best bid (the "Lead Bidder"), without any mechanism to submit disputes to the Court in the event that other parties in interest disagree. Both decisions are subject to conditions that could be applied arbitrarily. In designating bidders as qualified, the Debtor may reject such bids if they "materially deviate[] from the terms and conditions of the Purchase Agreement," and qualified bids must contain "other [unspecified] information reasonably requested by WFA." (Bidding Procedures, p. 5) In designating the Lead Bidder, the Debtor's decision may be "based on the bid amount and other factors, including … any other factors deemed relevant by WFA and the Notice Parties…." (Bidding Procedures, p. 5)

6
138862v1 2/9/2010 6:50:27 PM

Under the circumstances, and especially in light of the arbitrary conditions mentioned above, the Committee submits that the Bidding Procedures should allow for the Committee to potentially dispute the Debtor's designation of "qualified" bids and the "Lead Bidder" and submit that dispute to the Court for a determination if necessary.

F. **Credit Bid Procedure**

The Bidding Procedures as submitted provide that Amzak Capital Management, LLC ("Amzak"), the Debtor's pre-petition and DIP financing lender, may credit bid without posting a deposit, letter of credit, or bond. The Committee may have some concerns with this provision, in connection with the fact that there has been no financial disclosure concerning Amzak, its financial condition, and its ability to pay any amounts necessary to close a transaction. The Committee is discussing this issue with Amzak.[2]

G. **Allocation of Purchase Price**

The Bidding Procedures and Sale Motion do not clearly provide for a mechanism to allocate the bids or purchase price between real estate and personal property (equipment). Such an allocation may be necessary. In light of the presence of multiple secured creditors in this matter, such an allocation may prove to be necessary.

H. **Premature At This Time to Approve Entry of the Sale Order**

The Debtor apparently also requests approval of the sale order attached as Exhibit "B" to the Sale Motion. The Committee submits that approval of this order is premature at this time, as it contains a number of factual and legal determinations that are premature before bidders are

---

[2] Under the DIP financing order (See Docket #137 at p. 11), the Committee has until March 8, 2010 to file a Request for Authority (as that term is defined in that order). The Committee is still investigating the matters contemplated under the DIP financing order and the Committee reserves all of its rights with respect to such actions including without limitation its rights to file a Request for Authority and Amzak Actions as those terms are defined in the DIP financing order.

7

solicited, bids are received, and the auction is conducted. *See, e.g.,* page 2, under "G" ("WFA conducted the Sale Transaction process in accordance with the Bidding and Sale Procedures").

## III. RESERVATION OF RIGHTS

In light of the extremely expedited nature of the Sale Motion, the Court's Order setting that motion for hearing notes that objections may be made orally at the hearing. The Committee has filed this written Limited Opposition for the convenience of the parties and is continuing to review the Sale Motion and other papers in advance of the hearing. The Committee reserves its right to raise additional objections at the hearing as necessary.

## IV. CONCLUSION

For the reasons stated above, and on the existing record, the Committee opposes certain aspects of the proposed Bidding Procedures, and requests that such procedures be modified in the manner set forth above.

**WHEREFORE**, the Committee respectfully requests that the Bidding Procedures be modified in the manner requested herein as a part of an order on the Sale Motion, and that the Sale Motion not be approved unless the other concerns identified above are addressed.

Respectfully Submitted,

_/s/ C. Davin Boldissar_
**Omer F. Kuebel III (LA #21682)**
**C. Davin Boldissar (LA #29094)**
**Locke Lord Bissell & Liddell LLP**
601 Poydras Street, Suite 2660
New Orleans, Louisiana 70130-6036
Telephone: (504) 558-5100
Fax: (504) 558-5200

Attorneys for the Official Committee of Unsecured Creditors